**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 23 B 6723 |
| | ) | |
| NOVUS STRUCTURES, INC., | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Judge David D. Cleary |

**MEMORANDUM OPINION**

This matter comes before the court on the motion ("Motion to Excuse") of J&D Commercial, LLC ("Lender") for an order pursuant to 11 U.S.C. § 543 authorizing Ryan McNaughton ("Receiver") to remain in possession, custody and control of the real property located at 200 East 87th Street, Chicago ("200 East Property"). The Motion to Excuse also asks that the court modify the automatic stay to the extent necessary to permit the Receiver to exercise his powers to operate and maintain the 200 East Property. Debtor Novus Structures, Inc. ("Debtor") and the U.S. Trustee objected to the Motion to Excuse.

The Debtor filed a motion for turnover of property of the estate ("Motion for Turnover"), asking that the court order the Receiver to comply with section 543 and turn over all property of the estate in his possession, as well as furnish an accounting. The Lender objected to the Motion for Turnover.

The court entered an order ("June 28 Order") setting a briefing schedule. The June 28 Order also excused the Receiver from compliance with section 543 pending resolution of the Motion to Excuse and the Motion for Turnover, and authorized him to continue operating and maintaining the 200 East Property in the meantime. It also modified the automatic stay to the extent necessary to permit the Receiver to exercise his rights in accordance with his operation and maintenance.

Debtor timely filed its response ("Response") and Lender replied ("Reply"). The parties agreed that no evidentiary hearing was necessary. Therefore, having reviewed the papers submitted and considered the applicable law, the court will enter an order denying the Motion to Excuse and setting the Motion for Turnover for further status.

## I.      JURISDICTION

The court has subject matter jurisdiction under 28 U.S.C. § 1334 and the district court's Internal Operating Procedure 15(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E) and (G). Venue is proper under 28 U.S.C. § 1409(a).

## II.      INTRODUCTION

After prepetition litigation between Debtor and Lender, Debtor elected to file for relief under chapter 11.[1] Debtor's purpose in seeking relief under chapter 11 was to utilize the provisions of the Bankruptcy Code in an effort to maximize its estate for all creditors and potential equity holders, whether by restructuring or refinancing its debt or through a sale. Like most creditors, Lender does not favor the Debtor's entitlement to pause its efforts to collect amounts allegedly due to it. Therefore, Lender asks the court to excuse the Receiver's obligations under the Code that require turnover of property of the estate to Debtor. Lender also requests a modification of the automatic stay that halted the Receiver's control and administration of the 200 East Property.

In order "to protect the interests of the **secured creditors**," the state court appointed the Receiver in Lender's foreclosure action. (Motion to Excuse, ¶ 16 (emphasis added).) The Receiver has control of the 200 East Property and Lender prefers that the Receiver maintain that control.

---

[1] 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code" or "Code").

The parties do not dispute the material facts; instead, they differ in application of those facts to the appropriate statutory analysis. *See* 11 U.S.C. § 543. Section 543(d)(1) provides that (1) if the interests of creditors would (2) be better served by a custodian retaining control of property of the estate, then (3) the court may excuse compliance with the turnover requirement in § 543(b). The Lender asserts that it is in the best interests of all creditors, and that it would be "better served," if the Receiver appointed in its foreclosure action remains in place, controlling and administering the 200 East Property according to the state court receiver order and in compliance with state law.

In exercising its discretion, and after considering relevant factors, however, the court finds that creditors will not be better served if the Debtor remains dispossessed of property of the estate, thereby hindering or eliminating the possibility of its restructuring, refinancing or sale efforts for the benefit of all creditors. Turnover will not be excused, and the Receiver must comply with § 543(b).

### III.   BACKGROUND

#### A. Debtor's assets and liabilities

Debtor owns the 200 East Property, which is a three "unit apartment masonry building with (2) car detached masonry garage on site." (Response, Ex. A.) According to the Receiver's reports attached to the Response, which cover the period from April 14, 2022, to March 31, 2023, there are two residential tenants. Only one of the tenants pays rent.

In the Motion to Excuse, the Lender alleges that Debtor is obligated on a promissory note in the original principal amount of $176,250 ("Note"). The Note matured on May 5, 2019. Debtor's obligations under the Note are secured by a mortgage ("Mortgage") on the 200 East Property as well as an Assignment of Rents to the Lender.

On July 11, 2019, Lender initiated a state court case to foreclose on the Mortgage.  On April 14, 2022, the state court entered an order ("Receiver Order") appointing the Receiver. Pursuant to the Receiver Order, the Receiver has been maintaining the 200 East Property.  He details his activities and the status of the 200 East Property in regularly filed reports with the state court, which the Debtor attached to its Response.  According to those reports, Debtor "has been cooperative and provided some information to Receiver in terms of keys, access, and general information."  (Response, Exs. A-D.)

Beginning sometime during the period between July 1 and September 30, 2022, the "2nd floor tenant has been experiencing roof leaks and water damage due to strong deterioration of the existing building roof shingles."  (*Id.*, Ex. B.)  The Receiver requested state court approval to retain a vendor to "remove and replace the existing roof[.]"  (*Id.*)

On September 22, 2022, the state court entered a judgment of foreclosure and sale in the amount of $318,013.21.  About two months later, the state court granted the Receiver "permission to apply a new layer of architectural shingles over the existing roof[.]"  (*Id.*, Ex. C. *See id.*, Ex. E.) The Lender filed an insurance claim, and on or about November 22, 2022, the "insurance adjuster determined that the existing roof should have ***all*** of the existing layers of shingles removed[.]"  (*Id.*, Ex. C.)  Therefore, the Receiver did not undertake the previously approved repair, but instead asked "to proceed with a temporary tarp of the roof until the spring 2023 season as a ***temporary*** measure[.]"  (*Id.*)

On January 10, 2023, the Receiver attended a motion to authorize him to put on a roof tarp. (*Id.*, Ex. D.)  According to his report for the period from January 1 to March 31, 2023, no repairs were made during this period and no future repairs are to be made.  (*Id.*)  Debtor's counsel stated in open court on August 16, 2023, that there is still a tarp over the roof.

**B. Debtor's position regarding its assets and its intentions**

In the Response, Debtor asserts that the 200 East Property consists of two legal rental units.  At the time of the Receiver's appointment, only one unit was rented.  Over a year later, the other unit is still not rented out.  There is also a garden unit.

Debtor further asserts in the Response that if the court ordered turnover of the 200 East Property, it would immediately make efforts to put a tenant in the unrented unit.  The income from this rental would increase the monthly rent from $1,250/month to at least $2,500/month.  Debtor would use the rental income, along with other funds, to repair the roof.  "These steps will significantly increase the value of the Property and will allow the Debtor to either sell or refinance the Property and pay all creditors, in full."  (Response, ¶ 10.)

**C. Postpetition (in)activity**

On May 22, 2023, Debtor filed its petition for relief under chapter 11 of the Bankruptcy Code.  The next day, it sent a letter to the Receiver notifying him of the bankruptcy case filing and demanding that he turn over the 200 East Property.  Debtor received no response to this letter. (Motion for Turnover, ¶ 9.)

About a week later, Debtor's attorney sent an email to the Receiver, again demanding turnover of property of the estate.  (*Id.*)  When the Receiver still did not respond, Debtor filed the Motion for Turnover.

About a week after Debtor filed the Motion for Turnover, the Lender filed the Motion to Excuse.  It asked the court to excuse the Receiver from compliance with the turnover requirement of § 543(b), and instead authorize the Receiver to remain in possession, custody and control of the 200 East Property pursuant to § 543(d).  The Lender also requested modification of

the automatic stay pursuant to § 362(d), to permit the Receiver to exercise his powers to operate and maintain the 200 East Property.

For the approximately three-month period covered by each of the Receiver's reports, his fees and expenses varied between $1,861.25 and $2,480.  (Response, Exs. A-D.)  As of July 31, 2023, the balance in the Receiver's bank account was $7,945.35.  (EOD 38, attachment.)

It is still early in the life of this bankruptcy case.  Debtor does not have possession of the 200 East Property and its revenue, and thus has not been afforded the opportunity to maintain it, to seek additional tenants, or to develop a restructuring, refinancing or sale strategy.  Debtor has been dispossessed of the 200 East Property since the inception of the case; it has not yet filed a chapter 11 plan.  Debtor has filed its schedules, listing its creditors, as well as the three monthly operating reports that have come due.  Four creditors have filed proofs of claim.  The Lender, prior counsel, two tenants, and any other creditors have not yet filed a proof of claim.  A bar date of September 15, 2023, has been set by the court for non-governmental claims. (EOD 27.)

## IV.   DISCUSSION

### A. Creation and protection of the bankruptcy estate

#### 1.  The estate

When a debtor files for relief under the Bankruptcy Code, an estate is created.  The scope of that estate is determined by the language of 11 U.S.C. § 541, which states in relevant part:

> (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>
> > (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case…
> >
> > (6) Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

6

(7) Any interest in property that the estate acquires after the
commencement of the case.

The structure of the Bankruptcy Code, the policy behind it and the legislative history all suggest "that § 541(a)(1)'s scope is broad." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 (1983) (footnote omitted). *See Matter of Yonikus*, 974 F.2d 901, 904 (7th Cir. 1992) ("The legislative history of § 541(a) in both the House and Senate provides, 'The scope of this paragraph is broad. It includes all kinds of property, including tangible or intangible property, causes of action, and all other forms of property currently specified….'"). There is no dispute that the 200 East Property is property of this bankruptcy estate.

### 2.  Turnover

Section 541 also brings into the estate "any property made available to the estate by other provisions of the Bankruptcy Code. Several of these provisions bring into the estate property in which the debtor did not have a possessory interest at the time the bankruptcy proceedings commenced." *Whiting Pools*, 462 U.S. at 205 (citation and footnote omitted).

Among those provisions are §§ 542 and 543. Section 542 is not applicable in this contested matter, because it requires turnover of property held by an entity *other than* a custodian. The Bankruptcy Code tells us that the term "custodian" includes a receiver appointed by a state court. 11 U.S.C. § 101(11).

Property held by a custodian, such as a state-court appointed receiver, is governed by § 543:

> (a) A custodian with knowledge of the commencement of a case under this title concerning the debtor may not make any disbursement from, or take any action in the administration of, property of the debtor, proceeds, product, offspring, rents, or profits of such property, or property of the estate, in the possession, custody, or control of such custodian, except such action as is necessary to preserve such property.

Section 543 further provides that the custodian must turn over any property it holds, and file an accounting regarding that property:

> (b) A custodian shall--
>
>> (1) deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case; and
>>
>> (2) file an accounting of any property of the debtor, or proceeds, product, offspring, rents, or profits of such property, that, at any time, came into the possession, custody, or control of such custodian.

### 3. The automatic stay

The purpose of the automatic stay, which springs into existence upon the filing of a voluntary petition for relief under the Bankruptcy Code, is to halt all actions and to permit the debtor to manage its estate and restructure its obligations. It "has been described as one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat. Bank v. New Jersey Dep't of Env't Prot.*, 474 U.S. 494, 503 (1986) (quotation omitted).

In this case, Debtor was involved in prepetition litigation with Lender. The Lender asked the state court to appoint the Receiver, which it did. Although that state court foreclosure action and the Lender's collection efforts are stayed, the Receiver continues to control and administer property of the estate. Other creditors exist, however, and the automatic stay also applies to them. They are not parties to the state court proceeding in which the Receiver was appointed and must bring their claims to the bankruptcy court.

### B.  Discretion to excuse compliance with the turnover requirement of § 543

### 1.  Statutory basis

Section 541 creates the bankruptcy estate, and § 543(b) requires custodians to turn over property of the debtor. In this case, however, the Lender has requested that the Receiver be

excused from compliance with the mandatory turnover provision of § 543(b), pursuant to the

exception in § 543(d):

> (d) After notice and hearing,[2] the bankruptcy court--

>> (1) may excuse compliance with subsection (a), (b), or (c) of this section if the interests of creditors and, if the debtor is not insolvent, of equity security holders would be better served by permitting a custodian to continue in possession, custody, or control of such property, and

>> (2) shall excuse compliance with subsections (a) and (b)(1) of this section if the custodian is an assignee for the benefit of the debtor's creditors that was appointed or took possession more than 120 days before the date of the filing of the petition, unless compliance with such subsections is necessary to prevent fraud or injustice.

Section 543(d) consists of two subsections that provide alternative bases upon which a

custodian may be excused from the turnover requirement. The Lender requests that the Receiver

be excused pursuant to § 543(d)(1), which is the only section that might be applicable here. That

distinction is important. Section 543(d)(2), which excuses an assignee for the benefit of creditors

under certain circumstances, is **mandatory**. It requires the court to excuse compliance if the

statutory predicates are met.

Section 543(d)(1), in contrast, is **discretionary**. Thus, § 543(d)(1) provides that (1) if the

interests of creditors would (2) be better served by a custodian retaining control of property of

the estate, then (3) the court **may** excuse compliance.

## 2. The court exercises discretion when deciding a request under § 543(d)(1)

In determining whether to excuse compliance with the turnover requirement of § 543(b),

"the bankruptcy court has significant latitude to exercise its discretion." 5 Collier on Bankruptcy

---

[2] According to 11 U.S.C. § 102(1)(A), "after notice and a hearing" actually means "after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances[.]" The parties agreed that there was no need for an evidentiary hearing on this contested matter. "A hearing is of course not required when no one demands it." *In re Bartle*, 560 F.3d 724, 729 (7th Cir. 2009). *See In re Dill*, 163 B.R. 221, 224 (E.D.N.Y. 1994) ("Nothing in [section 543(d)] or legislative history necessarily requires that an *evidentiary* hearing be held.").

¶ 543.05 (16th 2023) (footnote omitted).  *See In re Packard Square LLC*, 575 B.R. 768, 778

(Bankr. E.D. Mich. 2017), *aff'd, In re Packard Square, LLC*, 586 B.R. 853 (E.D. Mich. 2018); *In re MJS Las Croabas Properties, Inc.*, No. 12-05710 ESL, 2013 WL 2367868, at \*5 (Bankr.

D.P.R. May 29, 2013).

The Lender minimizes the discretionary nature of § 543(d)(1) with two arguments.  First, it contends that the court cannot consider the interests of the Debtor.  Second, it attempts to ring-fence the court's discretion with a formulaic approach based on a set of judicially-created factors.

Like many creditors seeking relief under § 543(d), Lender states that this section is an extension of the abstention doctrine set forth in § 305.  The difference between §§ 305 and 543(d), however, is important.  Abstention under § 305 allows suspension or dismissal of the debtor's entire bankruptcy case.  That is why a debtor's interest is specifically enumerated as a factor to be considered in the application of § 305.

The Lender's argument that a debtor's interests were omitted from § 543(d) and therefore "are not to be considered in the court's decision" is misplaced and, as here, often used to misdirect the court as an attempt to narrow the discretionary lens through which the court will examine the basis to excuse compliance.  Motion to Excuse, ¶ 14, citing *In re Foundry of Barrington P'ship*, 129 B.R. 550, 558 (Bankr. N.D. Ill. 1991) ("section 543(d) does not require ***or permit*** consideration of the interest of the debtor") (emphasis added) and *In re Falconridge, LLC*, No. 07-BK-19200, 2007 WL 3332769, at \*7 (Bankr. N.D. Ill. Nov. 8, 2007) ("The interests of the debtor are not to be considered in the court's decision.").

Omission of the debtor's interest in § 543, however, does not ***preclude*** its consideration. In fact, it provides "greater flexibility to the court in exercising its discretion."  5 Collier on

10

Bankruptcy ¶ 543.05 (16th 2023).  The effect of "abstention" from turnover, and the consequent

inability of the ***debtor*** to pursue a reorganization ***for the benefit of creditors*** under the remaining

operative Code sections, ***may*** be considered by the court.  Thus, the debtor's ability to control

property of the estate and its proceeds to restructure and propose a plan, as a fiduciary to the

estate – which works a benefit to the debtor as well as to creditors – may be considered.  And,

other factors, such as whether the secured creditor who seeks to excuse a custodian from the

turnover obligation has alternative (and more appropriate) relief available, may be considered.

*See In re Constable Plaza Assocs., L.P.*, 125 B.R. 98, 104 (Bankr. S.D.N.Y. 1991) ("A more

significant factor to be considered is that the state court foreclosure action has been halted by the

automatic stay…. Unless and until the automatic stay is modified or terminated, the

administration of the debtor's case and the disposition of property of the estate should continue

under the aegis of this court and in accordance with the general provisions of the Bankruptcy

Code and Rules.").

Lender ignores the discretionary nature of § 543(d)(1).  A determination that the creditors

would be better served does not ***require*** the court to excuse compliance.  Unlike the mandatory

provisions of § 543(d)(2), the court ***may*** excuse the Receiver under § 543(d)(1) in the exercise of

its discretion.

**C. The Receiver shall not be excused from compliance with sections 543(b)(1) and (2) and the stay is not modified to permit the Receiver's continued operation and maintenance of the 200 East Property**

**1. Burden of persuasion in a motion to excuse compliance from turnover obligation is on the movant**

Because section 543 establishes specific default rules generally favoring the turnover of assets to the trustee or debtor in possession in order to centralize the administration of the bankruptcy estate and to further reorganization policy, the party requesting excusal from turnover bears the burden of establishing that compliance should be excused. The burden then shifts to the debtor to show why turnover is appropriate. Thus, the general rule requires turnover while retention of

11

> property is the exception. Turnover is favored because a substantial weight is added to the debtor's burden of attempting to reorganize and to promulgate an acceptable plan of reorganization if debtor cannot have access to all of its assets during its initial breathing spell.

5 Collier on Bankruptcy ¶ 543.05 (16th 2023) (footnotes and quotation omitted). *See In re Franklin*, 476 B.R. 545, 551 (Bankr. N.D. Ill. 2012) (moving party's burden is the preponderance of evidence standard). *See also Falconridge*, 2007 WL 3332769, at *6 ("Generally, basic equities would favor a debtor in possession having access to all its assets while attempting to reorganize."); *In re Northgate Terrace Apartments, Ltd.*, 117 B.R. 328, 332-33 (Bankr. S.D. Ohio 1990) ("The turnover provisions of 11 U.S.C. § 543 are part of the statutory expression of the Congressional preference that a Chapter 11 debtor be permitted to operate and control its business during the reorganization process.").

In the Motion to Excuse, however, the Lender presents a list of judicially-created factors with very little analysis of how it can satisfy its burden of proving that the court should depart from the presumption of turning over estate property to the Debtor.

**2. Court will not exercise its discretion to excuse the Receiver from compliance with § 543**

**a. Interests of creditors are not better served by excusing the Receiver**

Section 543 provides that (1) if the interests of creditors would (2) be better served by a custodian retaining control of property of the estate, then (3) the court *may* excuse compliance. The court will first consider whether the creditors of this estate will be better served if the Receiver retains control of the 200 East Property. The answer is no.

In this case, the interests of the Debtor are aligned with the interests of the non-Lender creditors. The Lender is acting, as one would expect, in its own self-interest. It is not motivated to maximize the return to other creditors. Keeping the Receiver in place would impose

unnecessary costs that benefit only the Lender, and work to the detriment of the Debtor, all other creditors and this bankruptcy estate.

Furthermore, keeping the Receiver in place prevents implementation of the tools available under the Bankruptcy Code.  If the 200 East Property is turned over to the Debtor, as Congress set up to be the default upon the filing of a bankruptcy case, the Debtor can use the cash generated by the property in a variety of ways as contemplated by the Code.  It can repair the 200 East Property, it can market the property for sale, it can refinance the debt, or it can engage in any combination of these options in developing a plan of reorganization.  In this manner, the interests of the Debtor align with the non-Lender creditors, who will be better served by turnover.

Finally, if the 200 East Property remains with the Receiver, Debtor loses its ability to freely fulfill its fiduciary duties to creditors under the Bankruptcy Code.

### b.  Lender's Motion to Excuse nullifies the statutory requirements and safeguards in the Code

Even if the interests of some or all creditors would be better served, an additional reason exists for the court to decline to exercise its discretion to excuse the Receiver.  Granting the Lender's Motion to Excuse would effectively permit the Lender to further its interests without satisfying the requirements in the Bankruptcy Code with which it would otherwise need to comply in order to dispossess the Debtor and gain control of estate property.  In other words, it shifts the burden imposed by other Code sections, specifically §§ 1104 and 362, away from the Lender.

### i.  Appointment of a trustee or examiner

11 U.S.C. § 1104 provides for the appointment of a trustee, displacing the chapter 11 debtor-in-possession, when cause exists or if such appointment is in the interests of creditors, any

13

equity security holders and other interests of the estate. *See In re Waterworks, Inc.*, 538 B.R. 445, 465 (Bankr. N.D. Ill. 2015) (The trustee "takes over, displaces and divests the current management of all control of and possession of property of the debtors' estate."). In order to achieve this result, which is an "extraordinary remedy," *Adams v. Marwil*, 564 F.3d 541, 546 (2d Cir. 2009) (quotation omitted), many courts require the movant to show that it has met its burden of proof by clear and convincing evidence. There is "a strong presumption that the debtor is to remain in possession." *In re LHC, LLC*, 497 B.R. 281, 291 (Bankr. N.D. Ill. 2013). As with turnover of property to the debtor at the commencement of a case, "[t]he default position is that current management will retain control of the company[.]" *Tradex Corp. v. Morse*, 339 B.R. 823, 826 (D. Mass. 2006).

Even if a motion to appoint a trustee is granted, a lender does not have the sole ability to select the person who will fill that role. Instead, the U.S. Trustee convenes "a meeting of creditors for the purpose of electing" the trustee, who must be a disinterested person and comply with the powers and duties set forth in the Bankruptcy Code. 11 U.S.C. § 1104(b)(1).

In this situation, where the Debtor's hopes for reorganization are pinned to the operation and maintenance of its sole piece of real property, the Lender essentially seeks appointment of a trustee under the lesser standard of "whether the interests of creditors would be better served."

### ii. Modification of the automatic stay

11 U.S.C. § 362(d) provides that, after notice and a hearing, the court shall grant relief from the automatic stay either for cause, or if the debtor lacks equity and the property is not necessary to an effective reorganization. In this case, in addition to the Receiver being excused from turnover, the Lender requests modification of the stay "to the extent necessary to permit the

14

Receiver to exercise his powers to operate and maintain the Property pursuant to the terms of the Receiver Order."

This request does not comply with the procedure required by the Code, Federal and Local Rules, and related statutes. Neither does it satisfy the burden imposed on a party that moves for relief from the stay. Instead, the Motion to Excuse asks for the stay to be modified simply to comply with the Receiver Order and Illinois law. There is no mention of cause to lift the stay, no mention of whether the Debtor has equity in the 200 East Property or whether it is necessary to the Debtor's effective reorganization. Would excusing the Receiver from compliance with § 543 result in a complete lifting of the automatic stay to allow the Lender to continue the state court foreclosure proceeding without payment of the required fee, without following the procedures in the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules, and without addressing the statutory elements that would justify modification? Does the Lender propose that the bankruptcy court relinquish unsupervised control over property of the estate? What "cause" and justification exists for such relief? Lender is attempting to shift the burden for stay modification to the lesser standard of "whether the interests of creditors would be better served."

### iii. Harm to the estate and creditors

Allowing the Receiver to remain in possession and control of the 200 East Property is inconsistent with the other remedies available under the Code. Through the Motion to Excuse, the Lender attempts to obtain the same result without jumping through the procedural and substantive hoops the Code requires. Furthermore, the Receiver's retention and control of the 200 East Property harms the estate and the creditors. The Lender not only asks the court to allow the Receiver to remain in place, but also requests authority for him to operate and maintain the 200 East Property under the Receiver Order while the Debtor stands to the side and is unable to

15

satisfy its obligations to the bankruptcy estate, its creditors and the court.  Here, the Receiver would have control of property of the estate, but limited obligations to the estate.  Yet, the Debtor would be dispossessed of its primary asset, which is necessary to restructuring, but remain bound to fully comply with its obligations under the Code.

The Bankruptcy Code provides the Lender with the remedies it seeks.  As described above, in order to remove a chapter 11 debtor-in-possession, creditors may move for appointment of a trustee under § 1104.  Alternatively, a lender may ask the court to lift the automatic stay.  Each of these remedies carries a different burden of proof and has different effects on the other creditors of the estate.

With the Motion to Excuse, the Lender is attempting to achieve the same result under a lesser standard and lower burden of proof.

### c. The Lender's application of judicially-created factors does not support excusing the Receiver from compliance with § 543

Over time, courts have focused on several factors for evaluating motions to excuse compliance from the default turnover obligation in § 543(b).  These factors include:

(1) The likelihood of a reorganization;

(2) The probability that funds required for reorganization will be available;

(3) Whether there are instances of mismanagement by the debtor;

(4) Whether turnover would be injurious to creditors;

(5) Whether the debtor will use the turned over property for the benefit of its creditors;

(6) Whether or not there are avoidance issues raised with respect to property retained by a receiver, because a receiver does not possess avoiding powers for the benefit of the estate; and

(7) The fact that the bankruptcy automatic stay has deactivated the state court receivership action.

16

*See Falconridge*, 2007 WL 3332769, at \*7.  While these factors are helpful, the court's analysis is not limited to them.  *See, e.g., Ty, Inc. v. Publications Int'l Ltd.*, 292 F.3d 512, 522 (7th Cir. 2002) (statute providing a non-exhaustive list of factors was "a checklist of things to be considered rather than a formula for decision").  Even if the *Falconridge* factors are applied to this case (as some were, above), the court, in its discretion, will not excuse the Receiver.

The Lender argues that certain factors, set forth in *Falconridge*, should apply here, and that their application justifies excusing the Receiver from the obligation to turn over the 200 East Property and to comply with § 543(b).  According to the Lender, those applicable factors are: (1) lack of evidence of the likelihood of a successful reorganization; and (2) mismanagement through failure to pay the real estate taxes.

### i.   Likelihood of a reorganization

The Lender argues that "the Debtor has not presented any evidence that it has any prospect for a successful reorganization."  Motion to Excuse, ¶ 15.  The Lender's argument, however, improperly places the burden of proof where it does not belong.  As the movant, especially one asking the court to exercise its discretion to undo the statutory presumption created by Congress, the Lender bears the burden of proof.  *See* 5 Collier on Bankruptcy ¶ 543.05 (16th 2023) ("the party requesting excusal from turnover bears the burden of establishing that compliance should be excused") (footnote omitted).  *See, e.g., Matter of Steenes*, 918 F.3d 554, 557 (7th Cir.) ("the exercise of this discretion [to flip the statutory presumption]—like the exercise of all judicial discretion—requires a good reason"), *on reh'g*, 942 F.3d 834 (7th Cir. 2019).  It is not Debtor's burden to demonstrate to the court that a successful reorganization is likely.

17

Although the burden is not on the Debtor, it makes several allegations in the Response that lend weight to its opposition on the grounds that a successful reorganization *can* be achieved.  There are only two legal units in the 200 East Property, and despite being in possession of the property for more than a year, the Receiver has rented only one of them.  Debtor contends that if it were placed back in possession of the property, it "would immediately seek to get a tenant in Unit #1."  Response, ¶ 10.  This would likely double the rental income, which suggests that the second factor – the probability that funds required for reorganization will be available – also weighs in the Debtor's favor.  If the rental income is increased, the Debtor could undertake needed repairs.  All of these actions would "significantly increase the value of the [200 East] Property and will allow the Debtor to either sell or refinance the Property and pay all creditors, in full."  *Id*.

Debtor's allegations in the Response are consistent with those voiced by its counsel at the August 16, 2023, hearing on the Motion to Excuse.  She argued that the value of the 200 East Property is depressed by the failure to repair the roof; with a tarp over the building, it has been nearly impossible to find new financing or to list it for sale.  Between the funds held by the Receiver and an insurance check held by the Lender, there is nearly enough money to repair the roof.  But while the Receiver remains in place, his charges average over $600 every month.  Allowing the Receiver to remain in place will, at the very least, significantly delay the prospects for a successful reorganization.

Finally, Lender contends that a successful reorganization is not likely because "the Debtor had an inability to service Lender's debt and went into default under the loan documents."  Motion to Excuse, ¶ 15.  Nearly every chapter 11 debtor experiences some inability to pay their creditors, especially in the months leading up to a bankruptcy filing.  *See Northgate*

*Terrace Apartments*, 117 B.R. at 332 ("The existence of prepetition defaults in payment to a lender which occurred prior to any action by the lender to secure possession of future rents pursuant to a rent assignment is not sufficient to entitle a receiver to ignore the mandate of § 543(a) of the Bankruptcy Code and refuse to turn over a debtor's property."). What is the purpose of a chapter 11 reorganization, if not to allow a debtor who was unable to timely pay all of its obligations the opportunity to pause, restructure, evaluate its options and continue on to success? If a prepetition failure to pay a secured creditor inevitably led to the conclusion that a reorganization is not likely, nearly all chapter 11 cases would be doomed before they begin.

For all of these reasons, the "likelihood of a reorganization" factor does not weigh in favor of allowing the Receiver to be excused from compliance with § 543.

### ii. Mismanagement – failure to pay real estate taxes

The Lender's second argument is that there are instances of mismanagement by the Debtor, specifically, the failure to pay prepetition real estate taxes "when due for the 2019 tax year and all subsequent years[.]" Motion to Excuse, ¶ 15.

The Debtor acknowledged in the Response that it was unable to pay the real estate taxes on the 200 East Property. Failure to pay real estate taxes, however, does not necessarily constitute mismanagement. A not insignificant percentage of bankruptcy cases that involve real property include a financial default involving real estate taxes. Moreover, according to the Receiver's reports attached to the Response, the 2020 property taxes payable in 2021 and the 2021 property taxes payable in 2022 are both paid in full.

> The final factor to be considered is whether there has been mismanagement by the Debtor. This is a difficult assessment to make because the majority of debtors who file chapter 11 probably do so because they are struggling to meet expenses and/or suffering from lack [sic] effective management. Capmark's questioning of the witnesses, and the arguments set forth at the hearing and in its papers, suggest that the proof of the Debtor's mismanagement is the Debtor's mortgage payment

19

default and failure to timely pay certain property maintenance expenses. If every
debtor in default was deemed to have mismanaged its business for purposes of §
543(d)(1), it would be virtually impossible for any debtor to regain control of its
property and to enjoy the presumption that chapter 11 debtors should operate as
debtors in possession.

*In re R & G Properties, Inc.*, No. 08-10876, 2008 WL 4966774, at *10 (Bankr. D. Vt. Nov. 21,

2008), *stayed by* 2008 WL 5102284 (Bankr. D. Vt. Nov. 21, 2008).  Failure to pay property taxes

may have been a problem for this Debtor in the past, but it is not one that rises to the level of

mismanagement that would support departing from the statutory presumption.

> ### iii.  Remaining *Falconridge* factors weigh in favor of denying the Motion to Excuse

Although the burden is not on the Debtor to defeat the Motion to Excuse, it highlighted

how the remaining *Falconridge* factors weigh in its favor.  The fourth and fifth factors ask the

court to consider whether turnover would be injurious, or whether the Debtor will use the turned

over property for the benefit of its creditors.  Debtor contends that once the 200 East Property is

in its possession, it will bring in a new tenant and use the increased rental income to repair the

roof.  Rather than harming creditors, these actions would benefit all creditors, including the

Lender.

There are no allegations that there are avoidance issues raised in this case (the sixth

*Falconridge* factor), but the seventh and final factor weighs in Debtor's favor.  The automatic

stay has deactivated the state court receivership action. Although the Lender asked that the stay

be modified to allow the Receiver to continue to operate and maintain the 200 East Property, he

is not under the jurisdiction of the bankruptcy court.  As Debtor points out, the Receiver is "not

bound by any of the duties or obligation[s] imposed on a DIP[.]"  Response, ¶ 15.

20

## V.    CONCLUSION

According to § 543(d)(1), the court has discretion to determine whether or not to excuse a custodian from compliance with the default obligation to turn over property in its possession. The burden of convincing the court to flip the statutory presumption lies with the movant, who has failed to satisfy it in this case.  Whether considering this contested matter under the plain language of § 543(d)(1) or the judicially-created list of factors, the court's conclusion is the same – the Receiver should not be excused from his turnover obligation.

For all of the reasons stated above, the court will enter an order consistent with this Memorandum Opinion, denying the Motion to Excuse.  The Receiver must comply with the provisions of 11 U.S.C. § 543(b).  To the extent the June 28 Order excused the Receiver from compliance with Section 543 and modified the automatic stay pending resolution of both the Motion to Excuse and the Motion for Turnover, the motions have both been resolved.  Status on the Motion for Turnover will be continued to Wednesday, September 20, 2023.

Date:   September 11, 2023

MLU

DAVID D. CLEARY
United States Bankruptcy Judge

21